UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CITY GAS COMPANY,

    Plaintiff,

    v.                                                          Case No. 22-C-311

HARTFORD ACCIDENT & INDEMNITY COMPANY,
TIG INSURANCE COMPANY,
f/k/a Ranger Insurance Company, and
TRAVELERS CASUALTY AND SURETY COMPANY,
f/k/a Aetna Casualty and Surety Company,

    Defendants.

---

## DECISION AND ORDER ON HARTFORD'S MOTIONS FOR SUMMARY JUDGMENT

---

    Plaintiff City Gas Company brought this action for declaratory relief against its former insurers, Defendants Hartford Accident and Indemnity Company, TIG Insurance Company, and Travelers Casualty and Surety Company, seeking a determination that it has insurance coverage under their respective policies for costs of its legal defense and of environmental investigation and remediation that City Gas has or will incur in the future. The case was removed from State court and this court has jurisdiction under 28 U.S.C. § 1332. Hartford has filed a motion for summary judgment on the ground that City Gas' claim is barred by Wisconsin's six-year statute of limitations for claims based on breach of contract. In the alternative, Hartford seeks a determination that the per-occurrence limit of $5 million applies for each policy period. For the reasons that follow, the court concludes that City Gas' action is not barred by the statute of limitations and Hartford's motion seeking summary judgment on that ground must therefore be

denied. Hartford's alternative motion for a determination that the per-occurrence limit of $5 million per policy period applies will be granted.

## BACKGROUND

City Gas operated a manufactured gas plant in Antigo, Wisconsin (the MGP site) for approximately forty years, from 1909 to 1949. Before natural gas and propane became commonly available, manufactured gas plants (MGPs) operated in many parts of the country generating gas for heating, lighting, and cooking. Unfortunately, the plants discharged wastes that could result in environmental damage. Contamination indicative of MGP by-products and wastes, such as coal tar, has since been identified both at the MGP site and south of it. The Wisconsin Department of Natural Resources (WDNR) issued a potentially responsible party (PRP) letter to City Gas on June 21, 2001.

City Gas knew of the potential environmental contamination at and/or emanating from the MGP site, as well as the likelihood that at least a portion of the contamination resulted from City Gas' former operations, at least since the 1990s. In February 1992, the WDNR notified the City of Antigo of a report of soil contamination and requested that it proceed with investigation and remediation under the direction of a qualified environmental consultant. The City apparently passed the request on to City Gas, and as early as May 11, 1992, City Gas made its first request to Hartford that it provide copies of its policies for City Gas from 1963 through 1969. Hartford responded that it was unable to fulfill the request because it only had records of policies from 1972 through 1992.

In February 1994, City Gas hired an environmental consultant, RMT, to conduct a preliminary field survey at the MGP site. RMT recommended that a further subsurface investigation be done, assessing the nature and extent of impacts that may be associated with the

2

former MGP. On April 21, 1994, City Gas sent a letter to Hartford, asserting that it was insured under several Hartford comprehensive general liability (CGL) and umbrella liability policies from 1963 to 1969. The letter identified several insurance policy numbers and effective dates (the alleged policies; Policy Nos. 86 C 718481, 86 C 806038, 86 C 807908, 80 HU 100053, 86 HU 102331). In that tender letter, City Gas stated that, based on RMT's preliminary report, the presence of potentially toxic residues from the MGP site would potentially require remedial action by or on behalf of City Gas, and the letter was to provide notice of the matter and the potential claim by City Gas under the identified policies for the cost of all remediation and related costs.

Hartford responded that the information in the tender letter was insufficient for it to make a coverage determination regarding the alleged policies or the MGP site, but that it would investigate the matter. Further, Hartford requested copies of the policies, and City Gas provided copies of payments made by City Gas to Hartford for comprehensive and umbrella liability policies from 1963 to 1971. On September 12, 1994, Hartford stated that City Gas had not supplied adequate information to verify the endorsements of those policies and would take no further action. Because City Gas had earlier that summer received a letter from the WDNR finding no indication of contamination at its former MGP and removing it from the Environmental Repair Case Tracking system, City Gas terminated its efforts to locate historic insurance policies. In addition, the Wisconsin Supreme Court held in June of that year that an insurer's duty to defend was not triggered by a PRP letter from a government agency and that remediation costs did not constitute damages within the meaning of a CGL policy. *City of Edgerton v. Gen. Cas. Co. of Wis.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994).

The WDNR apparently reopened its investigation and sent City Gas a PRP letter on June 21, 2001. On July 11, 2003, the Wisconsin Supreme Court overruled its previous decision in *City*

3

*of Edgerton* and held that an insurer's duty to defend was triggered by a PRP letter and that remediation costs did constitute damages within the meaning of a CGL policy. *Johnson Controls, Inc. v. Employers of Wausau*, 2003 WI 108, 264 Wis. 2d 60, 665 N.W.2d 257. In light of these developments, City Gas tendered a new claim for coverage to Hartford on September 16, 2003. City Gas' second tender letter included the alleged policy numbers identified in the April 1994 letter, as well as four additional policies (Policy Nos. 86 C 805305, 86 C 809300, 86 HU 103430, and 86 C 810440). City Gas had also tendered its defense to two other CGL carriers that insured it over the years: TIG Insurance Company (formerly known as Ranger Insurance Company) and Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company). Travelers accepted City Gas' tender of defense on January 15, 2004, while Ranger accepted on July 28, 2005.

Hartford, however, did not accept City Gas' tender of defense. On June 18, 2004, Hartford responded to City Gas' September 2003 request stating that it had previously declined coverage based on its conclusion that City Gas' proffered records had not established the existence, terms, and conditions of the alleged policies; that it had searched its own records and was unable to locate evidence of the policies under which City Gas sought coverage; and that, although it would consider any new evidence to the contrary, it stood on its prior decision to decline coverage. Hartford further noted that, because almost ten years had passed since it first declined coverage, the applicable statute of limitations appeared to have expired with respect to City Gas' rights to bring a coverage suit under the alleged policies. On October 18, 2004, City Gas advised Hartford that City Gas believed it could meet its evidentiary burden of proving the existence of the alleged policies, and on September 26, 2005, it advised Hartford that it would be in its best interest to accept the tender of defense obligation under a reservation of rights, rather than continuing to

4

decline defense coverage. Although Hartford maintained its denial, City Gas did not initiate coverage litigation at that time.

On May 3, 2011, City Gas sent another letter to renew its tender for coverage of the WDNR claim at the MGP site under the same alleged policies, but this time it also attached a previously lost insurance policy from 1971 (Policy No. 86 C 810440) that City Gas allegedly discovered while moving its offices. In its letter, City Gas acknowledged that it never pursued its potential claim against Hartford in 1994 and that Hartford declined coverage in 2003. City Gas again asserted that it had proof of premium payments to Hartford during all the years covered by the alleged policies and that the newly found policy could serve as evidence of the likely terms of prior and subsequent policies. On June 14, 2013, Hartford agreed to defend City Gas, under a reservation of rights, against the WDNR claim pursuant to Policy No. 86 C 810440. However, Hartford declined to participate in City Gas' defense of the WDNR claim under any other policies allegedly issued by Hartford, referring City Gas to Hartford's 1994 and 2004 declination letters regarding all other alleged policies.

On July 2, 2013, City Gas replied that it was "not dropping [its] tender of the defense under the prior policies" and that it disagreed with Hartford's coverage position as to the alleged policies but did not believe it was necessary to resolve the dispute at that time. On September 8, 2020, after receiving invoices for work performed by City Gas' environmental consultant, Hartford informed City Gas that it considered that work to be remedial and refused to pay the invoices because it had only agreed to pay for defense costs.

On May 23, 2021, City Gas disclosed that it had located copies of five additional Hartford policies (Policy Nos. 86 C 812198, 86 C 814096, 86 C 816203, 86 C 817391, and 86 HU 103430). City Gas employees Gary Smits and John Ebel were searching for documents in the summer of

2021 and found copies of these policies in a file storage area. These records had been within City Gas' possession, stored either at its current or prior address. In February 2022, City Gas initiated this action, seeking coverage from Hartford under policies it previously tendered in 2003 as well as the five additional policies discovered in 2021. During the course of this litigation, City Gas has also asserted its right to coverage under three additional policies (Policy Nos. 86 C 713994, 86 C 714899, and 86 C 716205), which it had not previously alleged, on the basis of secondary evidence it located while the action was pending.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). In deciding a motion for summary judgment, the court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that

party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Statute of Limitations

Hartford argues that City Gas' coverage claim under the alleged policies is barred under Wisconsin's statute of limitations governing claims for breach of contract. The Wisconsin statute of limitations for contract claims states in relevant part: "an action upon any contract, obligation, or liability, express or implied . . . shall be commenced within 6 years after the cause of action accrues or be barred." Wis. Stat. § 893.43(1). There is no dispute that Wisconsin's six-year statute of limitations governs this case. The dispute is over how it applies.

Hartford argues that the six-year statute of limitations began to run no later than June 18, 2004, when Hartford advised City Gas that it stood by its "prior declination of coverage" and unequivocally rejected City Gas' tender of its defense to the WDNR's June 21, 2001 PRP letter. Hartford further advised City Gas even at that time that it believed the applicable statute of limitations had expired. Dkt. No. 62-12 at 3. Despite its stated view that it had a "fairly strong case for coverage," Dkt. No. 62-13 at 2, City Gas did not bring suit at that time but instead waited another eighteen years to do so. Under these circumstances, Hartford contends, City Gas' claim against it is barred.

City Gas, on the other hand, argues that it did not have a presentable claim against Hartford until it suffered damages from Hartford's breach because, otherwise, a plaintiff "cannot satisfy the third element of a breach of contract claim." Pl.'s Br. in Opp'n at 7, Dkt. No. 80. Because Travelers and Ranger paid for City Gas' defense in response to the June 2001 WDNR PRP letter starting in 2004 and 2005, City Gas incurred no out-of-pocket expenses for such defense

7

expenditures. Accordingly, City Gas contends, it had no presentable claim against Hartford until Hartford refused to pay for remediation costs in 2020, "when City Gas first suffered financial injury as a result of [Hartford's] breach." *Id.*

"In an action for breach of contract, the cause of action accrues and the statute of limitations begins to run from the moment the breach occurs." *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 609, 497 N.W.2d 115 (1993) (citations omitted). But when a breach occurs depends on the terms of the contract. In support of its argument that the breach occurred no later than June 18, 2004, when it rejected City Gas' tender of defense, Hartford relies upon cases that addressed claims brought under the uninsured or underinsured motorist provisions of automobile insurance policies which require the insurer to pay its insureds damages where the negligent has no insurance or insufficient insurance to cover the loss. In *Abraham v. General Casualty Company of Wisconsin*, 217 Wis. 2d 294, 313, 576 N.W.2d 46 (1998), for example, the court held that the statute of limitations was triggered not by the accident that caused the insured plaintiff's injuries but by the insurer's breach of contract that occurred when it rejected its insured's request for payment. Likewise, in *Yocherer v. Farmers Insurance Exchange*, 2002 WI 41, ¶ 17, 252 Wis. 2d 114, 643 N.W.2d 457, another case involving underinsured motorist coverage, the court held that the statute of limitations begins to run "on the date of the loss, that is, the date on which a presentable claim exist[s] for [an insured] against his insurer." *See also Effert v. Heritage Mut. Ins. Co.*, 160 Wis. 2d 520, 528, 466 N.W.2d 660 (Ct. App. 1990) (claim for uninsured motorist coverage accrued when tortfeasor's insurer became insolvent or when uninsured motorist carrier denied claim). The breach of contract in each case consisted of the insurers' breach of the insurers' duty to pay their insureds for their losses after the losses occurred.

But unlike the cases cited by Hartford, this case involves liability insurance policies. Liability insurance policies typically impose two main duties on the insurer: the duty to defend the insured against claims brought by third parties and the duty to indemnify the insured against any damages or losses to third parties for which the insured is found liable. *Johnson Controls, Inc. v. London Market*, 2010 WI 52, ¶ 28, 325 Wis. 2d 176, 784 N.W.2d 579. The duty to defend is generally a continuing duty that exists throughout the litigation against the insured or is otherwise extinguished. *Burgraff v. Menard, Inc.*, 2016 WI 11, 367 Wis. 2d 50, 875 N.W.2d 596. And the duty to indemnify does not arise until the liability of the insured is determined. *Acuity v. Chartis Specialty Ins. Co.*, 2015 WI 28, ¶ 27 n.19, 361 Wis. 2d 396, 861 N.W.2d 533 (noting "the duty to indemnify . . . arises only when the insured's underlying liability is established" (quoting 14 STEVEN PLITT ET AL., Couch on Insurance § 200:3 at 200–10 (3rd ed.1997))).

Given the nature of the duties Hartford owed City Gas under the CGL policies City Gas purchased, the court concludes that the action is not barred by Wisconsin's six-year statute of limitations. The duty to defend, as noted above, is a continuing duty; it continues as long as the litigation or other proceedings that seek to impose liability on the insured continues. To be sure, City Gas could have brought an action for declaratory relief against Hartford earlier. It could have sought a declaration that Hartford was contractually obligated to defend and indemnify it against the claims asserted in the WDNR 2001 PRP letter when Hartford refused its tender of defense in 2004. But it was not required to do so, especially since it had not yet located its policies.

A contract that imposes a continuing duty can be partially breached. "[I]f the promisor has a continuing duty to perform, generally a new claim accrues for each separate breach." *Segall v. Hurwitz*, 114 Wis. 2d 471, 491, 339 N.W.2d 333 (Ct. App. 1983). "Each partial breach is actionable and is subject to its own accrual date and own limitation period." *Hi-Lite Prods. Co. v.*

9

*Am. Home Prods. Corp.*, 11 F.3d 1402, 1408–09 (7th Cir. 1993) (citing 4 CORBIN ON CONTRACTS § 956, at 841 (1951)). It is true that a continuous contract is capable of "a single total breach by repudiation or a material failure of performance." *Id.* at 1409 (quoting *Segall*, 114 Wis. 2d at 491). "If a single total breach occurs, the right to bring an action accrues at that time and the statute of limitations begins to run." *Segall*, 114 Wis. 2d at 491–92. But "[w]here at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach." *Jensen v. Janesville Sand & Gravel Co.*, 141 Wis. 2d 521, 528, 415 N.W.2d 559 (Ct. App. 1987) (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 243(3) (1981)).

In this case, Hartford's 2004 rejection of City Gas' tender of the defense of the WDNR's PRP letter was not a total breach. Although Hartford rejected City Gas' tender at that time, the rejection was not final. Hartford promised to reconsider its decision if City Gas provided additional evidence of the policy provisions: "Of course, if you have any new or different secondary evidence that you would like us to consider, please forward such documentation to my attention and we will promptly consider it and advise you of any impact that this information has on our coverage position." Dkt. No. 62-12 at 3. And when City Gas later provided Hartford with a copy of one of the several policies Hartford had issued it, Hartford undertook the defense of City Gas under a reservation of rights. Even if Hartford's rejection of the tender of defense was viewed as a repudiation, under *Jensen*, the breach would not be considered "total," since Hartford remained under a duty to provide City Gas a defense as long as the claims against it continued. *See Moffat v. Metro. Cas. Ins. Co. of New York*, 238 F. Supp. 165, 175 (M.D. Pa. 1964) ("There was a continuing of breach of the duty to defend. The policy required Metropolitan to represent

10

Moffat in every state of the proceedings in the smog cases— investigation, preparation for trial, trial, post-trial, and appellate proceedings. It had the right at any time to revoke its disclaimer."); *see also Wiseman Oil Co. v. TIG Ins. Co.*, 878 F. Supp. 2d 597, 601 (W.D. Pa. 2012) (holding the statute of limitations on an action for breach of an insurer's duty to defend would not begin to run until termination/judgment against the insured in the underlying litigation, rather than "on the date of the disclaimer" by the insurer).

And, of course, the statute of limitations would not have begun to run on Hartford's breach of its duty to indemnify City Gas for its liability for the remediation costs, property damage, or other loss covered by the policies until the amount of that loss is determined. Because the record does not disclose whether that determination has yet been made, the court is unable to say that the statute of limitations on City Gas' claims against Hartford has run. Hartford's motion seeking summary judgment on the ground that the action is barred by the statute of limitations is therefore denied.

**B. Policy Limits**

The parties also dispute the policy limits available under each of Hartford's umbrella policies. Hartford issued three umbrella policies to City Gas covering three separate multi-year periods from 1963 to 1972. The latter two policies covered a period of three years and provide a property damage (PD) occurrence limit of $5 million. The first policy covered a period of three-and-a-half years and had a $1 million dollar occurrence limit for the first three years, which was increased to $5 million for the balance of the policy period. Hartford argues that the PD occurrence limit for each Hartford Policy applies for the entirety of each policy period, resulting in total coverage under its umbrella policies amounting to $15 million. City Gas, on the other hand, argues that the PD occurrence limit for each Hartford Umbrella Policy applies on an annual basis. In

11

other words, City Gas argues that a separate per-occurrence limit applies for each year or part of a year covered by a policy, resulting in total coverage under Hartford's umbrella policies of $38 million, representing seven years with limits of $5 million each, plus three years with limits of $1 million each.

The parties' dispute is over the meaning of the insurance policies. Interpretation of an insurance policy, like the interpretation of any contract, presents a question of law. *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. Wisconsin courts interpret the terms of an insurance policy as they would be understood from the perspective of a reasonable person in the position of the insured. *Frost ex rel. Anderson v. Whitbeck*, 2002 WI 129, ¶ 20, 257 Wis. 2d 80, 654 N.W.2d 225. The words used in an insurance policy are given their plain and ordinary meaning. *Secura Ins. v. 33 Allenton Venture, L.L.C.*, 2023 WI App 3, ¶ 5, 405 Wis. 2d 700, 985 N.W.2d 109. When the terms are plain and unambiguous, Wisconsin courts will "construe the contract as it stands." *Frank v. Wis. Mut. Ins. Co.*, 198 Wis. 2d 689, 694, 543 N.W.2d 535 (Ct. App. 1995). However, "[a]mbiguities in policy terms are construed against the insurance company that drafted the policy." *Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶ 26, 266 Wis. 2d 569, 669 N.W.2d 166.

The term "occurrence" in Hartford's umbrella policies, as relevant here, is defined as "an accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes . . . property damage . . . neither expected nor intended by the insured." Dkt. No. 67, ¶ 15. The definition of "occurrence" also provides that, "[w]ith respect to . . . property damage, all such exposure to substantially the same general conditions existing at or emanating from one location or source shall be deemed one occurrence." *Id.* Section III of the policies carries the heading "Limits of Liability." It reads:

> Regardless of the number of persons and organizations who are insureds under this policy and regardless of the number of claims made and suits brought against any or all insureds, the total limit of the company's liability for ultimate net loss resulting from any one occurrence shall be the occurrence limit stated in the declarations; provided, however, that the company's liability shall be further limited to the amount stated as the aggregate limit in the declarations with respect to all ultimate net loss caused by one or more occurrences during each annual period while this policy is in force commencing from its effective date and arising out of either (1) products-completed operations liability, or (2) occupational diseases of employees of insureds, such limit applying separately to (1) and (2).

*Id.* ¶ 14.

The plain meaning of the first part of this provision would lead one to conclude that Hartford has the better argument. It states that the "total limit of the company's liability . . . resulting from any one occurrence shall be the occurrence limit stated in the declarations . . . ." The policy also states, "[w]ith respect to . . . property damage, all such exposure to substantially the same general conditions existing at or emanating from one location or source shall be deemed one occurrence." *Id.* ¶ 15. It is undisputed that the occurrence limit in the three policies was $5 million. *Id.* ¶¶ 8–9. Given the policy definition of "occurrence," it also seems clear that all the property damage claimed arises out of a single occurrence that must have occurred within the policy period. Nothing in this language supports City Gas' contention that each year gives rise to a new $5 million limit.

It is the proviso clause to the section on liability limits that raises questions. That clause reads: "provided, however, that the company's liability shall be further limited to the amount stated as the aggregate limit in the declarations with respect to all ultimate net loss caused by one or more occurrences *during each annual period* while this policy is in force commencing from its effective date and arising out of either (1) products-completed operations liability, or (2) occupational diseases of employees of insureds, such limit applying separately to (1) and (2)." *Id.* ¶ 14 (emphasis added). The statement that "the company's liability shall be further limited" suggests

13

that the clause is intended to reduce the total amount of coverage otherwise available. That is what to "further limit" means. But how the total limit is further limited remains unclear.

We are told that the company's total liability is "further limited to the amount stated as the aggregate limit in the declarations," which is also $5 million. Dkt. No. 57-9 at 4. The aggregate limit then applies "with respect to all ultimate net loss caused by one or more occurrences during each annual period while this policy is in force commencing from its effective date and arising out of either (1) products-completed operations liability, or (2) occupational diseases of employees of insureds . . . ." Dkt. No. 67, ¶ 14. The parties do not address whether the property damage claimed falls within either of the coverages described in (1) or (2). While it clearly does not fall under (2), "occupational diseases of employees of the insureds," it is unclear whether it would at least in part fall under coverage in (1), "completed operations liability." Even if the property damage claimed would fall within the completed operations coverage, however, it appears the result would be the same.

That the limitation speaks of one or more occurrences "during each annual period" supports City Gas' contention that the policy limit applies on an annual basis. But the limiting clause concerns application of the "aggregate limit." The word "aggregate," when used as an adjective, means "formed by the collection of units or particles into a body, mass or amount." MERRIAN-WEBSTER'S COLLEGIATE DICTIONARY 23 (10th ed. 1999). The phrase "aggregate limit," then, refers to multiple claims, the aggregation of which must fall within the limit. Here, there is only one claim resulting from one ongoing occurrence. It thus follows that the occurrence limit applies, not the aggregate limit. *See SECURA Ins. v. Lyme St. Croix Forest Co., LLC*, 2018 WI 103, 384 Wis. 2d 282, 918 N.W.2d 885 (holding that fire started by logging equipment that burned thousands of acres was a single occurrence and thus aggregate limit in CGL policy did not apply).

14

Based on the plain terms of the policy, Hartford's liability is therefore limited to $5 million for each of the three policy periods.

There appear to be no Wisconsin cases that directly address this issue. In *Society Insurance v. Town of Franklin*, 2000 WI App 35, 233 Wis. 2d 207, 607 N.W.2d 342, the Wisconsin Court of Appeals held that the separate occurrence limits of a series of one-year policies could be stacked or "aggregated" to indemnify the insured Town against the costs of cleaning up environmental contamination resulting from the operation of a municipal dump. The court based its ruling in that case on the fact that the Town had purchased consecutive one-year insurance policies and paid a separate premium for each policy based on its assessment of the risk undertaken for the one-year policy period. With these facts in mind, the court concluded, "the insured should get the full benefit of the coverage it purchased from the insurer." *Id.* ¶ 11.

In this case, in contrast, Hartford agrees that the PD occurrence limits of each of its multi-year policies may be stacked or aggregated. The dispute is over whether the separate occurrence limit applies to each year the multi-year policies covered. City Gas seeks to multiply the single occurrence limit of each policy by the number of years in the policy period. This is in contravention of the plain language of the policy. To adopt such an approach would be to rewrite the unambiguous policy language and expand the coverage above the intended limits. The court has no power to do so. *See Am. Girl, Inc.*, 268 Wis. 2d 16, ¶ 23, 673 N.W.2d 65 ("[W]e do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium.").

Courts in other jurisdictions have reached similar results. In *Hercules, Inc. v. AIU Insurance Company*, 784 A.2d 481, 495–96 (Del. 2001), for example, the Supreme Court of Delaware rejected the insured's argument that the occurrence limits in a multi-year CGL policy

should be considered annual occurrence limits, finding that the language of the policy "unambiguously provides for annual limits in some cases and per occurrence limits in others." *See also Goodyear Tire & Rubber Co. v. Hartford Acc. & Indem. Co.*, No. 97-933, 2005 WL 6244202, at *10 (W.D. Pa. Mar. 11, 2005) ("Courts interpreting language in policies similar to that at issue here have refused to apply annual 'occurrence' limits in multi-year policies."), and cases cited therein.

City Gas argues, on the basis of New Jersey law, that Wisconsin courts would decide the issue differently. The court is unpersuaded. New Jersey's handling of this issue is derived from the New Jersey Supreme Court's decision in *Owens–Illinois, Inc. v. United Insurance Co.*, 138 N.J. 437, 650 A.2d 974 (1994). But *Owens-Illinois* dealt with the issues of what was needed to trigger coverage under a policy and how to allocate liability for asbestos-related personal injury and property damage claims against a manufacturer of industrial products among multiple CGL policies that covered varying periods of time. The case did not address the question of how a per-occurrence policy limit would apply. In later decisions, courts applying New Jersey law concluded that, "[b]ecause the imposition of per-occurrence limits in multi-year policies contravenes the goals of the pro-rata methodology established in *Owens–Illinois*, such limits are unenforceable as specifically written." *IMO Indus. Inc. v. Transamerica Corp.*, 101 A.3d 1085, 1108, 437 N.J. Super. 577, 617 (N.J. Super. 2014) (citing *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 978 F. Supp. 589, 608 (D.N.J. 1997), *aff'd in part, rev'' in part*, 177 F.3d 210 (3d Cir. 1999)). In other words, the New Jersey courts have concluded that, for policy reasons dealing with allocation of insurance proceeds in cases involving asbestos claims, the plain language of the policies will not be given effect. Wisconsin courts have not arrived at such a conclusion. Hartford

is entitled to have its policies enforced as written. Hartford's alternative motion for summary judgment will therefore be granted.

## CONCLUSION

For these reasons, Hartford's first motion for partial summary judgment barring City Gas' claim for coverage based on the statute of limitations (Dkt. No. 60) is **DENIED**. Hartford's alternate motion for partial summary judgment regarding application of the per-occurrence limits in the Hartford umbrella policies (Dkt. No. 64) is **GRANTED**.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of May, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge