UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CITY GAS COMPANY,

        Plaintiff,

        v.         Case No. 22-C-311

HARTFORD ACCIDENT & INDEMNITY COMPANY,
TIG INSURANCE COMPANY,
f/k/a Ranger Insurance Company, and
TRAVELERS CASUALTY AND SURETY COMPANY,
f/k/a Aetna Casualty and Surety Company,

        Defendants.

## DECISION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART TIG INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    Plaintiff City Gas Company brought this action for declaratory relief against its former insurers, Defendants Hartford Accident and Indemnity Company, TIG Insurance Company, and Travelers Casualty and Surety Company, seeking a determination that it has insurance coverage under their respective policies for costs of its legal defense and of environmental investigation and remediation that City Gas has or will incur in the future arising out of its operation of a gas manufacturing plant in Antigo, Wisconsin. The case was removed from State court and this court has jurisdiction under 28 U.S.C. § 1332. The case is before the court on TIG's motion for partial summary judgment. TIG contends that, under the plain terms of its policy, it has no duty to defend or indemnify City Gas for remediation costs attributed to its manufactured gas plant. TIG also seeks a determination that, as a matter of law, its liability is limited to $5 million over the entire three-year period during which its policy was in effect, as opposed to a separate $5 million limit for each year. For the reasons that follow, the court concludes that TIG's motion for summary

judgment on the issue of coverage should be denied.  TIG's motion for a determination that the per-occurrence limit of $5 million per policy period applies, however, will be granted.

## BACKGROUND

City Gas operated a manufactured gas plant at 118 Clermont Street in Antigo, Wisconsin (the MGP site) for approximately forty years, from 1909 to 1949.  Before natural gas and propane became commonly available, manufactured gas plants (MGPs) operated in many parts of the country generating gas for heating, lighting, and cooking.  Although City Gas ceased operating its MGP in approximately 1950, and has moved several times since then, City Gas remains the owner of the MGP site.  Today, City Gas operates as a natural gas utility.

City Gas' operations at the MGP site resulted in the release of various contaminants into the environment surrounding the MGP site, including tars and other materials which subsequently migrated through soil and groundwater.  The parties have stipulated that "[t]he release of various contaminants caused by City Gas' and/or its predecessors' MGP operations was continuous commencing before 1950 and every year to the present."  Dkt. No. 72, ¶ 11.  On June 21, 2001, the Wisconsin Department of Natural Resources (WDNR) sent a potentially responsible party (PRP) letter to City Gas stating that "it appears that contamination indicative of coal tar was detected south of the former coal gasification plant" and that City Gas was "responsible for restoring the environment at this site."  *Id.* ¶ 12.  City Gas tendered its defense of the WDNR's claim to its various insurers and now seeks a declaration that it has coverage for the investigation and remediation costs it has incurred as a result of the WDNR's PRP letter under the various insurance policies it purchased.

Ranger, TIG's predecessor in interest, issued two Special Multi-Peril primary policies (Ranger Primary Policies) to City Gas from February 1, 1985, to January 1, 1986 (Policy No. SMP

2

321939) and from February 1, 1986, to January 1, 1987 (Policy No. SMP 328182). It also issued to City Gas an excess policy with a per-occurrence limit of $5 million (Ranger Umbrella Policy) from January 1, 1973, to January 1, 1976 (Policy No. RU 232043). Based on the plain language of the policies, TIG argues that it is entitled to partial summary judgment declaring that the Ranger Primary Policies do not provide coverage for the property damage caused by the operations at the MGP site that are the subject of the WDNR's June 2001 PRP letter. TIG also contends that, under the plain terms of the policy, its coverage under the excess policy is limited to $5 million.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). In deciding a motion for summary judgment, the court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that

party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Ranger Primary Policies

"Insurance policies are contracts, and they should be interpreted as such." *Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶ 18, 371 Wis. 2d 478, 885 N.W.2d 591. "Interpretation of an insurance policy is a question of law." *Id.* The court's main focus is the language of the policy, which is given "its plain and ordinary meaning as understood by a reasonable person in the position of the insured." *Id.* (internal quotation marks and citation omitted). When the terms are plain and unambiguous, Wisconsin courts will "construe the contract as it stands." *Frank v. Wis. Mut. Ins. Co.*, 198 Wis. 2d 689, 694, 543 N.W.2d 535 (Ct. App. 1995). However, "[a]mbiguities in policy terms are construed against the insurance company that drafted the policy." *Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶ 26, 266 Wis. 2d 569, 669 N.W.2d 166.

TIG claims that, under the plain terms of its policies, there is no coverage for the property damage caused by operations at the MPG site. TIG's argument focuses on the liability insurance coverage provision of its Special Multi-Peril Polices, which reads:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and ***arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises***, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, . . . but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Dkt. Nos. 72-1 at 23 & 72-2 at 26 (emphasis added).

"An insured's costs of restoring and remediating damaged property . . . are covered [property] damages under applicable CGL policies, provided that other policy exclusions do not apply." *Johnson Controls, Inc. v. Employers Ins. of Wausau*, 2003 WI 108, ¶ 5, 264 Wis. 2d 60, 665 N.W.2d 257. For purposes of the current motion, the parties do not dispute that the property damage was caused by an occurrence, which is defined by the policy to include "continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Dkt. No. 72-1 at 22. The question before the court, then, is whether there is evidence from which a reasonable jury could conclude that property damage "arose out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises."

The phrase "insured premises," as relevant here, means "the premises designated in the declarations." *Id.* at 24. The premises designated in the declarations under the two primary Ranger policies are: (1) 10th & Western, Antigo, WI; (2) 814−816 9th Ave., Antigo, WI; and (3) 733 Fifth Ave., Antigo, WI. The MGP site, which is located at 118 Clermont Street, is not listed. Under the heading "Description of Hazards and Location" the declarations also list "Gas Companies" and "Vacant Land." *Id.* at 5.

TIG argues that the property damage at issue in the case (release of tar and other contaminants during MGP operations) arose, if at all, out of the ownership, maintenance, or use of the MGP site, which is not an insured premises. Since the MGP site is not an insured premises, TIG argues, there is no coverage under the plain terms of its policies and it is entitled to judgment as a matter of law. City Gas, on the other hand, argues that corporate decisions from its headquarters at least contributed to the property damage and that managing the site from there

5

"involves operations that are, at minimum, incidental to City Gas's operations in 1985 and 1986." Pl.'s Br. in Opp'n at 7, Dkt. No. 74.

In support of its argument that there is no coverage under its policies, TIG cites *Schinner v. Gundrum*, which involved a homeowner's insurance policy that contained an exclusion of liability coverage "for bodily injury or property damage liability arising out of a premises that is *not* an 'insured location.'" 2013 WI 71, ¶ 83, 349 Wis. 2d 529, 833 N.W.2d 685. In *Schinner*, the insured homeowner hosted an underage drinking party at a shed at the family-owned trucking business that was not an insured location under the homeowner's policy. One of the many guests at the party who had a reputation for violence became intoxicated and assaulted and seriously injured another guest. The victim sued the homeowner and his insurer to recover damages for his injuries. *Id.* ¶ 2. The Wisconsin Supreme Court held that because the injury arose out of the use of an isolated shed on an uninsured premises, any coverage provided by the policy was excluded. *Id.* ¶ 9.

In so ruling, the court held that an injury arises out of a premises that is not an insured location when there is a "'causal relationship' between the premises that are not insured and the insured's action or non-action giving rise to liability." *Id.* ¶ 89. In applying that test to the facts before it, the *Schinner* majority concluded that "a causal relationship between the shed and the plaintiff's injury was present." *Id.* ¶ 90. The court explained:

> A portion of the shed was set up for a social gathering, especially an underage drinking party: chairs, tables, couch, a refrigerator, a CD player, and a Ping–Pong table for beer pong. The shed had no windows, thereby concealing the illegal activities inside. As counsel for West Bend aptly observed at oral argument for summary judgment, "It was an illegal party . . . . [T]hat's not the kind of thing one could have rented out the Knights of Columbus Hall to do. Or to have done out in your front yard at your residence. This had a causal nexus to the premises."

*Id.* (alterations in original).

Applying the same test to this case, TIG argues that there is no causal relationship between any of the insured premises under its policies and the environmental contamination that resulted from the operations at the MGP site that ceased more than 35 years before the effective date of its primary policies. Because the property damage at issue in the case has no causal nexus to an insured premises, TIG contends it is entitled to a declaration that the Ranger Primary Policies provide no coverage.

City Gas agrees with TIG that there must be a causal relationship between the insured premises and the alleged property damage for there to be coverage for property damage arising out of an insured premises. Pl.'s Br. in Opp'n at 5. But it is not its liability for the contamination that resulted from the operations at the MGP site some 35 to 75 years earlier that City Gas claims is covered by TIG's primary policies. City Gas argues that coverage exists under TIG's primary policies for its management of the MGP site during the period covered by TIG's primary policies. As noted above, the parties have stipulated that the release of various contaminants caused by City Gas' MGP operations was continuous starting before 1950 and "continuing every year to the present." It thus follows that it was occurring during the 1985–87 period covered by TIG's primary policies. It is also undisputed that, at the time the Ranger Primary Policies were in effect, City Gas was engaged in low-level activity to learn what might be possible, or necessary, to address former MGPs. Pl.'s Proposed Additional Material Facts ¶ 6, Dkt. No. 75. If City Gas was aware of the risk of environmental contamination from its former operations at the MGP location, it is at least arguable that it had a duty to take some sort of action to address it. City Gas contends that management of the former MGP site was "necessary and incidental to the business of the named insured and [was] conducted at or from the insured premises," i.e., its corporate headquarters. After all, "vacant land" was listed as one of the "Hazards and Locations" listed in the declarations

7

to its General Schedule for the Liability Insurance Section of its primary policies. Dkt. No. 72-2 at 3.

In response, TIG argues that, even if incidental operations in the form of decisions about managing the MGP site were conducted at an insured premises, those did not cause the property damage because the contamination arose out of the "MGP operations at a non-insured premises that ceased around 1950." Def.'s Reply Br. at 3, Dkt. No. 91. But TIG offers no evidence that City Gas' action or inaction during the policy period had no effect on the amount of damage it has now been called upon to remediate. It may be that there was nothing City Gas reasonably could or should have done during the period for which TIG provided primary coverage that would have made any difference on the extent of environmental damage caused by the operations at the MGP site. But that is not a determination the court can make from the record as it now stands. Because there appears to be evidence from which a jury could conclude that City Gas was negligent in failing to take action earlier, and that such negligence at least contributed to the property damage at issue, TIG is not entitled to summary judgment on the issue of coverage under its primary policies.

**B. Ranger Umbrella Policy**

Ranger provided umbrella excess liability insurance with a $5 million per-occurrence limit under a single policy that covered the period from January 1, 1973, to January 1, 1976. Dkt. No. 72-3 at 2. City Gas argues the per-occurrence limit applies on an annual basis for each year of the three-year policy period, totaling $15 million. The insuring agreement defines an occurrence as "an accident, including injurious exposure to conditions, which results, during the Policy period, in personal injury or property damage neither expected nor intended from the standpoint of the Insured." *Id.* at 8. The policy further provides that, "[f]or the purpose of determining the limit of

8

Case 1:22-cv-00311-WCG Filed 05/30/24 Page 8 of 12 Document 101

the Company's liability, all personal injury and property damage arising [from] continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." *Id.*

City Gas argues that the language of the Ranger Umbrella Policy is ambiguous as to whether it provides annualized policy limits. The insuring agreement provides in relevant part:

> **2. LIMIT OF LIABILITY**
> The Company shall only be liable for the ultimate net loss in excess of either
>
> **(A)** The limits of the Underlying Insurance as set forth in the attached Schedule of Underlying Insurance in respect of each occurrence covered by said Underlying Insurance.
>
> **(B)** An amount as stated in item 2(c) of the declarations as the result of any one occurrence not covered by said Underlying Insurance, (hereinafter called the "Underlying Limits"):
>
> and then only up to a further sum as stated in Item 2(A) of the Declarations in all in respect of each occurrence, but subject to a limit as stated in item 2(B) of the Declarations in the aggregate for each annual period of this Policy separately in respect of products liability and in respect of personal injury or occupational disease sustained by any employees of the Insured, and in respect of the insurance afforded under Division (III) of Insuring Agreement 1(B).

*Id.* at 10. Since the complained-of occurrence, in this case property damage, is an occurrence covered by the underlying insurance, Section 2(A) applies. City Gas argues, the insuring agreement is at least ambiguous as to whether the Ranger Umbrella Policy's per-occurrence limit should be annualized because the underlying CGL policies were issued on an annual basis by Hartford and the excess limits apply to "each occurrence covered by" Hartford's policies.

But this does not make TIG's policy ambiguous. City Gas' proposed reading of Section 2(A) would incorporate the meaning of "each occurrence" in Hartford's underlying policies into the Ranger Umbrella Policy. The Ranger Umbrella Policy unambiguously defines what "one occurrence" means, "for purposes of determining the limit of the Company's liability," irrespective

9

of the policy periods for underlying policies. Accordingly, the fact that Hartford issued the underlying policies on an annual basis, regardless of how those underlying policies defined "each occurrence," does not affect the application of the Ranger Umbrella Policy's per-occurrence limit as defined by its own terms.

City Gas also argues that per-occurrence limits apply annually under multi-year insurance contracts because Wisconsin has adopted "the continuous trigger theory of liability to long-term environmental contamination claims." Pl.'s Br. in Opp'n at 12. "An injury occurring during the policy period triggers coverage." *Soc'y Ins. v. Town of Franklin*, 2000 WI App 35, ¶ 8, 233 Wis. 2d 207, 607 N.W.2d 342. "To determine which policies are triggered, Wisconsin has adopted the continuous trigger theory." *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 53, 315 Wis. 2d 556, 759 N.W.2d 613 (citing *Soc'y Ins.*, 233 Wis. 2d 207, ¶¶ 8–9). Under this theory of liability, "all policies are triggered from exposure until manifestation" when there is "ongoing exposure to a harmful substance with harm occurring over several policy periods." *Id.* Thus, City Gas contends, because under this theory all three underlying CGL policies were triggered from 1973 through 1976, "the continuous trigger theory supersedes the policy definition of an occurrence and requires the Ranger [U]mbrella [P]olicy to provide its per-occurrence limit for each year of the three-year policy." Pl.'s Br. in Opp'n at 13.

But even if all of the underlying primary policies were triggered, nothing about the continuous trigger theory suggests that there is a new occurrence for each year of an excess policy that covers a three-year period. Indeed, where the continuous trigger theory applies, all damages result from one ongoing occurrence, not multiple ones. *Soc'y Ins.*, 233 Wis. 2d 207, ¶ 1. City Gas confuses the difference between determining which policies are triggered and determining what constitutes an occurrence or the number of occurrences that have taken place. *See Plastics Eng'g*

10

*Co.*, 315 Wis. 2d 556, ¶ 41 (making the same distinction). Wisconsin courts turn to the continuous trigger theory to make the former determination, while they "turn to the language of the policy" to determine the latter. *Id.* ¶ 42.

Interpreting a policy's nearly identical definition of occurrence, "Wisconsin has adopted the 'cause theory' to determine how many occurrences have taken place." *Id.* ¶ 35. Under the cause theory "where a single, uninterrupted cause results in all of the injuries and damage, there is but one 'accident' or 'occurrence.'" *Id.* ¶ 36 (citing *Welter v. Singer*, 126 Wis. 2d 242, 250, 376 N.W.2d 84 (Ct. App. 1985)). Accordingly, "under the policy language and the cause theory, [a] claimant's repeated exposure is one occurrence." *Id.* ¶ 39. Here, it is undisputed that the release of various contaminants caused by City Gas' MGP operations was continuous during the policy period. Thus, because the property damage to the MGP site arose out of repeated exposure to this condition, namely, the continuous and uninterrupted release of various contaminants, there was only one occurrence for purposes of determining the limit of TIG's liability. The plain language of the Ranger Umbrella Policy makes it clear that only one occurrence took place during its three-year policy period and therefore only one $5 million per-occurrence limit applies.

City Gas' remaining arguments are essentially the same as those raised in its opposition to Hartford's motion seeking a similar determination as to the umbrella policy it issued for several multi-year periods from 1963 to 1972. Rather than repeat that analysis here, the court will simply incorporate its discussion of the issue in its decision granting Hartford's motion which is entered herewith. For the reasons herein and in that decision, TIG's motion for partial summary judgment on this issue will be granted.

## CONCLUSION

For the foregoing reasons, TIG's motion for partial summary judgment (Dkt. No. 68) is **GRANTED-IN-PART** and **DENIED-IN-PART**. TIG's motion is denied as to the coverage dispute over the Ranger Primary Policies and granted as to the dispute over the per-occurrence limit under the Ranger Umbrella Policy.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of May, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge